Thank you, Mr. Schwartz, you may proceed. Thank you, Your Honor. May it please the Court, Andrew R. Schwartz, I'm here on behalf of the AFPLA, Charlene Quint. Justices, this appeal presents a statutory claim and requires this Court to decide if the lower court complied with the Illinois Withholding Act. The motion below from which this appeal arises was a denial of a turnover motion and the dismissal of a citation to discover assets under 214.02 of the Code of Civil Procedure. My position here is that the lower court erred by failing to do what the Withholding Act requires in the context of a motion for turnover of Social Security. And we ask that you reverse the lower court's decision and amend the case reconstructions to undertake the proper analysis required as interpreted in this court's true law opinion. Wasn't there a section I heard where a box was checked indicating maintenance? In this case, the box, what you're talking about, I believe, is the contempt judgment, and the contempt judgment was inaccurately filled out. I don't believe the box was adequately identified as to which portion was which. I thought the box was checked, but there was nothing inside the box that indicated an amount. There wasn't even a to-be-determined or something like doesn't have applied DNA or whatever. It just was empty. It was inaccurately described. Well, then, what exactly was this docket? Was it LM? Was it called Collections? What exactly was this venue? Well, this was the Circuit Court of Lake County, and it was the Collections Division. There had been a judgment for dissolution of marriage after – Was this through the D case, though? You didn't file a new case. It was the D case. You had – true or false? It is true. I don't remember. I don't know. Excuse me. I didn't mean to box you in, but you didn't file another case. You took the judgment in the D case to the Supplemental Proceeds Court. Correct, but the reason I'm hesitating is because the Supplementary Proceeding actually is a different case. It just has the same case number. That's why it's the Supplementary Proceeding. Okay. And then – That wasn't my question. My question was, was it through the D case? It was through the D case. It was. Can I ask you – Sure. You seem to be saying, so therefore, Judge Bittar at the time, or the Supplemental Proceeding judge, should have, according to you, one, allowed discovery, and two, then made the determination whether it was support, in which case it would be within the exception, or a property settlement, in which case it would not. But here's the real need of it. Okay. It's that you argued, or it was argued on behalf of the petitioner, that Judge Bittar would not have to advocate between support and property. Judge Bittar – The argument was made that the previous orders, the 98 orders, the typed judgment, which was completely nonspecific, and then the contempt order, which I assume you're asking us to read in parallel with the typed judgment, made it clear, and I think the contention was, it's all support. Not exactly. It's all in the nature of support, is what our argument is. Wasn't it argued in front of Judge Smith that Judge Bittar wouldn't have to allocate? I just don't recall that exactly. I do know that this was presented as a support type of obligation. I think it's 3 – I can't quite read it. I think it's 2336 in the common law record. Do you have the appendix type to it? I don't. I'm sorry. I pulled this from the massive record. It's a reply to response to motion to dismiss motion to allocate judgment – excuse me, motion to allocate payments of judgment. It was filed September 15, 2022. It was Charlene's motion to dismiss the matter in front of Judge Smith at the time, and as I read it, Charlene denied that anything in the matter before Judge Bittar would require Judge Bittar to allocate payments between maintenance and property in as much as the judgment and subsequent order and petition for enforcement, or it did so by adopting the figures in Charlene's petition as correct. I don't mean to put you on the spot. I don't have that committed to memory. Well, but the other side does – they make a big deal that, hey, I mean, the argument moves a little bit. I mean, there's some different things that are said, which caused me to go and, you know, take a close look at what was contended in front of Judge Smith, but they do argue a lot that Charlene's taking an inconsistent position. She said nothing needed to be done in front of Judge Smith. She demanded or, you know, asked that the petition in front of Judge Smith be dismissed because it was for a number of reasons, and it does seem that for whatever reason, and is it legally significant? I'm not sure, but it certainly does seem that after Judge Smith ruled, the parties went back to Bittar, and at that point the petitioner – excuse me, Judge Bittar – and the petitioner said, okay, allocate, and now I need some discovery, and certainly up here is saying Judge Bittar should have a lot of discovery so that he could make this allocation, and it does seem, I must say, inconsistent with the petition or the position that was taken in front of Judge Smith, who was being asked, allocate this. Well, let me explain it this way because I think there's an easier way to deal with it. If you take a look at Thomas' original motion to allocate the judgments before Judge Smith, Thomas asked Judge Smith to specify which portion of the JDM on the MSA, which was part of it, was attributed to spousal maintenance and which portion of the property settlement, and that's the records that would be C-2203. The amended motion to enforce and clarify – I don't know what followed then, but, you know, it would have been determined in the 9A orders. He was really asking. I mean, he may have been relying on things or pointing to things like the premarital agreement, which, you know, you certainly don't want that brought into it, and I get it, but you – or, excuse me, the other side didn't want the premarital agreement brought into it. Right. There's no question that, in the end, Judge Smith was being asked, we have this nonspecific September 8 judgment, and we need you to tell us what parts of the arrearage are for and what parts are property settlement. That is what they want. You didn't want that to happen. You're a client, excuse me. That is what was discussed at the hearing before Judge Smith. But keep in mind, with Judge Smith, if you take a look at page 4 of the December 15, 2022 hearing transcript, this is at lines 18 through 23, references 43. He said the following. The only thing that I would clarify what has been said here, I am only going to take care of a clarification of my order from September. Ms. Ventrelli – that was Ms. Quint's attorney at the time – indicated that there was some enforcement proceeding, and that is not for this court. And what I'm talking about here is, there is a distinction between the question that was presented to Judge Smith and the question that Judge Vitar sort of focused on. What's that distinction? The distinction is both of the motions that were filed by Thomas, that went before Judge Smith, focused on what the prior orders say, which presents a different question than what the Withholding Act and True Law require. The question that Judge Vitar needed to answer, and somebody needed to answer at the court below, is notwithstanding any labels on the marital settlement agreement or JVM, were these payments in the nature of support for purposes of the statute? There's no need to answer my question about that reply, where the petitioner takes the position that he won't need to allocate. He didn't need to – Judge Smith did not need to allocate. Not Judge Smith, Judge Vitar. In that reply, and again, I'm sorry if you feel – I know you're being very tolerant of a very, very particular question out of this vast record. And so I just – I want to quote that. No, I appreciate that. As a human rights – as a – you know, they're arguing, hey, she's inconsistent. They're taking – and, you know, based on that reply, it's right in there. Judge Vitar won't have to allocate anything because, essentially, it's all support. Well, let me do this. If you could give me the record side again, I'll take a look at it during counsel's argument. And I'll just refresh my recollection. It's in Volume 3. And I think it's just cut off at the bottom for me when you print it. But I think it's C-2336. 2336. Okay. I'll take a look at that. It's not. It's a filing 9-15-22. As a reply. Yeah. Okay. I will take a look at that. Mr. Schultz, can I ask you a question? Sure. You can't have an award of maintenance in your property, can you? It's been a long time since I've practiced in matrimonial stuff. Isn't that what you were asking the court to do? No. What I'm asking the court to do is to analyze whether these payments, all the cash payments and the payments that were designated as maintenance, are in the nature of support for purposes of the settlement act. But it is clearly and mildly related to property settlements. Well, the cash payments, and the point here is that if you take a look at the case law that we cited in our briefs, the case law holds that even if something is designated as a property settlement, it can be deemed in the nature of support because there is a recognition that property that is provided to a spouse, what we call a financially weaker spouse, can be used by that spouse to generate income and live off of. And that's in addition to maintenance. And I think the answer to your question is, my recollection is that you used to be able to do awards or agreements for unallocated maintenance, and that was back when I was doing matrimonial work in the 90s before I said I can't stand it anymore and went into something else. What did you decide to do? Well, I'm mostly a collection lawyer these days. I do a lot of my own collections. And that's relevant here because, Boyd, I will tell you I'm painfully aware of how Social Security, the exemption on Social Security makes it difficult to collect when you've got a creditor with a judgment and you've got a debtor who's getting Social Security. But in this case, you've got this statute, the Withholding Act, and you've got the federal statute and Social Security that have carved out an exception to the exemption because they believe there's a public policy in making sure that spouses and children are properly supported. So they said you can seek that type of information. You can't take that type of funds. Do you feel it would be improper for this court to make a determination as to what is property versus what is maintenance? Well, I don't. I think at this point, yes, because I think it would be a stretch because what we needed to have happen in the court below was we needed to have evidence of what the parties' financial positions were at the time of the divorce. That is a little bit of a hole in the record. I think you need to have evidence of what Charlene was going to do with the cash payments portion and how she was going to use that to support herself. And this is all the evidence that Judge Bitar would not allow the parties to present, which I think he had to present under the Withholding Act. Wouldn't the best case scenario here have been for whomever it was that filled out that form to have checked the correct boxes on that date? You know, if the parties had done everything perfectly, I always tell people that if clients and prior counsel had done everything perfectly, I would be out of business. I think the answer to your question is yes, it would have been better. And I can't speak to that. That was before I got involved in the case. And I can also say that having been a practicing attorney for almost coming up on 36 years, there are very few cases where I can honestly say that I would have done absolutely nothing differently ever in this case. You always are second-guessing yourself. You're always making decisions in the spur of the moment. And, you know, you work with what you've got. I think that's the answer. If I understand what you just stated in response to the question from Justice Shostak, you're saying that the record is not sufficiently complete for us to determine from the record what the amount for the nature and extent of support is for purposes of affecting and being involved or affected by the exemption. I think that's correct, and I think that you would at least need to do mathematical computations, which should have been presented and heard by Judge Vitar in the lower court, as to how much was unpaid for the maintenance portion, how much was unpaid for the cash payments portion, how much interest accrued on those. These are all calculable items, but that evidence has to be presented. And my understanding is that it has to be presented to the appellate court. If the appellate court, you know, if this court is inclined to do those calculations, it's possible to do them, but I would assume that you would want the parties to present that evidence first. And that didn't happen because Judge Vitar didn't allow it to happen. Would we be searching the record to reverse? Would you be? There is a protocol, a principle, an obligation on the appellate court. That is, we are supposed to search the record to affirm the judgment. If we were to do what you related, would we be searching the record to reverse? I don't think so. I think we have presented all of the necessary record sites and the appropriate arguments for what reversal in the case. I don't think you, I think the reasons that we've given in our briefs and the reasons that I'm happy to discuss with you here today, I don't think there's any. Maybe if you're talking about reverse and remand. Yeah, I think it needs to be remanded. I don't, I mean, I understand the court has the power over one of the rules, and I think it's in the 360 series, to I think it's 675, but I can figure out. But that's what we could, in any order, at the trial court. I think that's the one that I'm talking about. But I think that, you know, my preference, the way to do this, would probably be to make sure that we get all of the evidence in so that we have a fulsome and complete record. But it is mathematical, at least insofar as whatever maintenance, we'll just, using the terms from the judgment for dissolution, we'll call it maintenance and property settlement. I think that's what they used. It's a mathematical certainty, as of 9820, what those arrears just were. I would agree with that. Whether or not there's been additional property attached or payments made, it's true we don't know that. The judgment is, excuse me, the interest is also a mathematical certainty.  There's certainly a lot of discussion in the record about what was owed, the record in the trial court about what was owed. You also contend. So I guess I'd offer that. But the second part of it is, you're saying as to what was labeled property, that according to you, it could be determined to actually be support. Correct. But here's my question. When we determine that, isn't that a matter of contract law, based on the marital settlement agreement and the judgment for dissolution of marriage? If that's ambiguous, then we might take parole evidence. I don't mean we, actually. We certainly wouldn't do that. If it's ambiguous, then the court could look at parole evidence. But my question to you is, if it's not ambiguous from the perspective of a contract analysis, then why couldn't we just enter judgment if we felt it to do that? Well, first off, it's not a strict contract analysis. I mean, the contract is important. It is one factor to consider in determining whether a payment is in the nature of support. But it is not the whole ball of wax. And that was the Truer case, the Porter case, which cited the Collier Family Law and Bankruptcy Code provisions. It is one of the things to consider, but it's not the entirety. And I think you also need evidence, which is in the record, about the notice of default that was sent to Thomas. There were several notices of default sent to him, because that's what triggered his obligation to make good on the payments, and then his failure to do so within a certain time period caused an acceleration. Okay. So it's not just the data amounts that are listed as either maintenance or cash payments under the MSF. Would you say that there was an adjudication on merits in this case, or is your appeal basically arguing there wasn't an adjudication on merits and you're entitled to it? Well, there was no adjudication on the merits of the withholding act claim, which we're entitled to this. What Judge Bitar did was he essentially refused to hear it, because he ruled that the parties did not agree on the amount that was due in OI. And, you know, kind of threw up his hands. So your merits never got out. Let me narrow my point. Were there findings of fact and conclusions of law, which would result in either the execution or the non-execution of whatever the declaratory judgment was that the trial court entered? It was a final order. Is that what you're asking? Well, the nuance that I'm getting at is, yes, it may have been a final order, but wasn't an adjudication on the merits. Look at it this way. If he's doing what you allege he was doing, he wasn't doing what he should have done, which was adjudicate whether or not there should have been an exemption removed and an assignment or a payover made. That I would agree with. So as to the merits of that claim, are you contending that there was an adjudication on the merits or not? The reason I'm hesitating is he denied the motion for turnover, which is an adjudication on the merits, but he didn't reach the issue that he needed to reach, is my point. Did he ever have an evidentiary hearing on that? He did not. He did not allow discovery. He did not have an evidentiary hearing. And those are the flaws in what he did. That's our position. So you're submitting just my last question. Is there some ambiguity as a result of lack of an evidentiary hearing? I don't think there's any ambiguity that there was a lack of an evidentiary hearing. He said, I'm not going to hear this. I'm just going to rule without having any further hearing. Here are my reasons why, and that was his final order that he entered in the case. Then he dismissed the citation and denied the turnover motion. I guess my question was the dollar amount towards property versus towards maintenance is ambiguous as a result of the lack of hearing. Is your position. The dollar amount of what was in the nature of support was unresolved. I would phrase it that way. No further questions. I think the time went. The time was gone. In fact, I was going to ask Margaret if she had any further questions. No, thank you very much. Thank you. You have an opportunity to make the bubble. Thank you. Mr. Tan, I hope you have found the discussion interesting, as I have. I have found the argument interesting, and one of the reasons is I am a civil procedure wonk, and it really matters in this case, and I'll explain why in a moment. Good morning. My name is Michael Tannin, and I represent the respondent at the league, Tom Kalibik. I want to say first, this is my third appeal in the second district, but my first time ever appearing in this room. This room is spectacularly exquisite, so I'm glad to be here. You're a mid-century modern guy then. Right. I think the theme of my quick introduction is it matters. The appellant's duty to provide a sufficient record on appeal to supporter arguments matters. The words in a marital settlement agreement matter. Let me ask you this question. Does it matter which judge heard this, whether it was the collection judge or the divorce judge? That's my fourth point. The distinction between obtaining and modifying a judgment on the one hand and enforcing it on the other matters. The words in judgment orders matter, and civil procedure matters, and I will go into each of these arguments as we go. Clearly, this has been a litigious case. Lots of motions, a lot of jousting in different courtrooms, but Mr. Schwartz, for the first time that I can recall in the entire proceedings, it's the first time that the petitioner has admitted that the 9-8-20 judgment orders were wrong and inaccurate. And when that happens, if that happens, the duty is on the judgment holder to either modify, vacate, or appeal that order, and that never happened. The 9-8-20 judgment orders, one of them did not allocate anything at all to any part of the judgment. And in answer to your question, Justice McLaren, the typed order had a box marked for maintenance with no amount filled, and the other amount cash payments, which coincidentally referred to property, was in the full amount of $1,048,000. That's a problem, and that was a problem that was readily correctable by Ms. Quint within 30 days of that judgment being entered. In fact, she filed Section 1203, Motion to Modify, within 30 days to argue that the order should be changed so that money from the sale of a house and a boat be delivered directly to her instead of put in escrow. So she knew full well that these were final judgment orders, and to argue that years later a collections court had to pierce behind all that and rewrite the orders, I think it does offense to the case law that a judgment order cannot be collaterally attacked in supplemental proceedings. Can I get to that? I thought I heard you say that the other box referred to property settlement. Well, let me let you know I have it right here. I may have misheard that, because it's cash payments totaling the full amount of the arrearage. Correct. Which we all know was part support and at least nominally part property settlement. There is no, to be clear, you're right, there's no box for property payments, but it was marked other, and it said cash payments totaling $1,048,000. Cash payments was the term that was used in the petition to enforce and in the contempt proceeding by Ms. Quint to refer to property payments. And I will also add all the other boxes are all what we would all understand to be support. So it's child support, maintenance, maintenance is checked, medical, dental expenses, college expenses have been determined to be support, at least in some cases. So all those little ones, they're not checked except maintenance with no amount, and then other contains the full amount of the combined arrearage. Correct. So with this admission that the judgment orders could provide the very basis for everything that happens in the collections court were inaccurate, the duty was on Ms. Quint to fix that. And she never did, she never did so timely, and she fought every single effort in the family court to allocate or modify that order. I'm sorry, you said she fought against that allocation? When? Because that's, fighting usually is considered to be something other than passive resistance, which means it's usually an affirmative act. And what you were describing previously in your argument sounded much more passive than what you just said, which is this is now an affirmative act of aggression. So I can explain that.  When Ms. Quint finally disclosed that it was her contention that the entire judgment order was for spousal maintenance, meaning $1,048,000, Mr. Talabak filed a motion before Judge Smith in the family court to allocate. Ms. Quint? No, you're interrupting. Had Judge Beecher at that point entered any orders directing the parties to Judge Smith? Pardon? At the point when Mr. Talabak filed, I think it went to Judge Fins who sent it to Judge Smith, right? What I can say is that the motion to allocate filed in the family court by us, Mr. Talabak, was preceded by Ms. Quint's motion in the collections court for a turnover order where she declared that all of it was for domestic support obligations. Okay, but my question is before that motion was filed. The motion to allocate? Yeah, by your client. Had Judge Beecher officially directed you guys back to family court? The way I'll answer this question is that after the motion to allocate was filed in the family court, Judge Beecher backed off and allowed the family court to make its determination, if it could, because that was in the wheelhouse of the family court. Okay, but I mean, so the answer is no. No, Judge Beecher hadn't sent you to Judge Smith. That was an action taken affirmatively by your client. Right, but I would also say— I know his order later says, you know, it's a determination better made, I think his ruling of July 27, better made by the family court. I know that. There's another significant little thing that happened, and I'm going to say I believe that Judge Fiss and Judge Smith were acutely aware of what they needed to do because of this court's decision in the Watson case, which we cite in our brief, which is not cited by CALIBIC at all. In that situation, Judge Fiss and Judge Smith were in the same division, the family court division, dealing with a maintenance issue, and Judge Fiss should have walked down the hall to talk to Judge Smith about the procedural history of the case because they were in the same division. Here, there's a clear delineation between what the family court does and what the collections court does. So, Ms. Quint filed a motion to dismiss 2615, 2619, combined motion to dismiss, the motion to allocate before Judge Fiss. The 2615 grounds were that Mr. CALIBIC hadn't identified any specific provision in the Code of Civil Procedure to allocate, but importantly, Ms. Quint also contended that the motion to allocate should be dismissed because of another action pending, that is, a turnover motion in front of Judge Fiss. Judge Fiss denied the 2619 motion, saying that Judge Bitar was not dealing with the underlying nature or substance of the judgment. He is simply a collections judge, and he denied that motion. In fact, Ms. Quint, in her reply, in support of her motion to dismiss the original motion to allocate, she supplied a self-serving affidavit in her reply brief that said, you know, the collections court and the family court are both dealing with the same thing. It should be dismissed. So I hope I'm answering your question that I believe, based on the rules of the Lake County court and the clear delineation between what you do when you get a judgment and what you do when you enforce it, because those are bright lines, and that is why Judge Bitar appropriately waited and waited and waited for Judge Smith to make his decision. Could I ask you a question, please? Yes, of course. What if he would have said no? Yeah, what would have happened then? A different question. But it still would be directed to what I think is the bullseye and the target, and that is if the ex-wife filed a motion or petition for allocation in the family court, would you file any objections thereto? I'd like to slightly rephrase your question. If she had timely filed a petition to modify the judgment order to allocate within 30 days, I don't think we would have had any grounds to contest that. She went to the wrong place. In fact, she- But so can't you always modify or allocate judgment for dissolution? Judge Smith talked about that in the hearing, and he says the court's continuing jurisdiction is hemmed in by the rules of the Illinois Supreme Court and the Code of Civil Procedure. And what I think is significant is today, I'm looking at my notes, and she wanted Judge Vitar to analyze whether the party's payments were in the nature of support. That's far beyond mathematical calculation. And, in fact, my first point is- Is that a mixed question of law and fact? I think so, and I think it has to do with the nature of the actual judgment, and which is why my first point or second point is the words in a marital settlement agreement matter. In fact, you just issued an opinion in one of my other second district cases, Gray v. Hop, involving whether a cause of action sounding in sexual assault was released by a boilerplate provision in a marital settlement agreement. So, too, here. The marital settlement agreement, the parties abandoned their premarital agreement, the prenup. There was a merger clause. The parties agreed because they had foregone or forewent. I never knew what the past tense of forego was. I want the opportunity to engage in discovery that whatever they classify as a property really should not be used in a subsequent proceeding. Say that again? Whatever they classify as property? Pardon? What did you say? Say that again. Whatever they classify as property? There was a provision in the marital settlement agreement, and I can find it likely. I did give a color-coded marital settlement agreement. We attach it to our appendix. But the parties did not engage in discovery, and they codified that in their marital settlement agreement. So for Ms. Quint now to say that Judge Vitar, the wrong judge in my view, should have been… No, wait a minute about the wrong judge. Don't all circuit court judgments have jurisdiction over any case in the court? I said in my brief that that's kind of a fuzzy term. I mean, in an anecdotal sense, courts always have continuing jurisdiction, but the way Lake County is organized, there's one court that enters judgments and another court that enforces judgments. And I don't know how much more time I have or any more questions you have, but I want you to imagine this. Imagine Ms. Quint had a court reporter at the hearing on September 8, 2020. Assume that she entered exhibits into evidence which explained these damages. Imagine she might have even had a bystander's report of proceedings. We would not be here. Judge Smith, two years later, was flailing around because the record is inadequate. I completely agree with you, Justice McLaren. That no one ever? Pardon? She said there's no one ever. I'd rather be right than wrong. I forgot what I was going to say. I forgot what I was going to say. Sorry. Let me say, if you remember presenting Judge McLaren's in charge, pop in with me if you remember what you forgot. I didn't hear you. If you remember what it is you forgot to say, as far as I'm concerned, you can say it, although presenting Judge McLaren is in charge of our hearing today. But I do want to ask the same question I asked before, which is, can we, as the appellate court, if we decide there was error, can we determine, based on contract law, what was support and what wasn't? I would say that as a matter of math, enter an order saying this is so much support and there was a rearage for support in this amount and rearage for property as to that amount, act of any payments or interest. I would say you cannot. Why? Why? Why? Because that is something that Ms. Quinn should have done when she filed her petition to enforce. It's something she could have done at the hearing on 9820. It's something she could have done within 30 days thereafter. Okay, because of timeliness. But putting timeliness aside, do you think we could do it? Do I think the appellate court can... Could make that determination. No, I do not. Okay. I do not. Why not? Because I don't think the record supports, I don't think... There's hearings where, not to name names, but Mr. Pohl in front of Judge Smith says, oh, the amount, he did the breakup. This much property, this much maintenance. If that's a matter of fact, isn't that a factual judicial admission? I don't think it's a judicial admission. And one thing I have to say is that I never quite understood how it happened that the petition to enforce and the original petition for rule to show cause were filed in August of 19. And 13 months later, there was a hearing about the amount of money owed. The parties never came to an agreement about how much was owed in maintenance. And what Ms. Quint is trying to... Whatever it is, it was mathematical. I don't think it's purely mathematical. What else would affect that? Pardon? What else would affect that? It's a debt, and then there's payments. Well, Ms. Quint is arguing that there is no distinction between property and maintenance payments, and it all should be maintenance. Well, you're talking about the portion... As of the date of 9-8, just before those orders were entered, whatever was owned under support versus what was labeled, she wants to say it's a label. You want to say, no, that was actually property. But leaving that issue aside, it was a dollar amount that was mathematically ascertainable. I'm not sure it was mathematically ascertainable for this reason. Between August of 19 and September of 20, there were assets that were sold. There were... That doesn't really matter because whatever that error was, if it wasn't taken into account, if there were figures there that the parties are responsible for whatever errors are. I think Ms. Quint is responsible for the errors in the orders that her counsel drafted. According to Illinois Supreme Court 271, the prevailing party prepares the order. The order says what it says. It was never moved to be modified or vacated on a timely basis. When we tried to do it in front of Judge Smith, she said no. I think it was Justice McLaren's point. No, it was actually your point. On September 15, 2022, in response to the motion, in support of her motion to dismiss the motion to allocate on pages 2336 to 2042, Ms. Quint said there is no need to allocate, and Judge Meachar doesn't need any further adjudication. So... What do we do with that? I mean, I know you say, I think you say it's collateral estoppel. Well, I argue judicial estoppel... Judicial estoppel. Because she was taking positions in one court and taking contrary positions in another court. But these were her arguments. There's no need to allocate, and now we have to go back years later to have a hearing in front of Judge Meachar. This is what I want to say that's so significant about the Watson case. Judge Smith and Judge Fitts were kind of witch-hunted by this court for not talking to each other about a case that was before them in the same division. In this case, because Judge Smith was in the family court and Judge Meachar was in the collections court, they couldn't go down the hall and chat with each other and... They don't have phones in Lake County? Pardon? They don't have phones in Lake County? I don't know. So I... I... Stemophores. Pardon? Stemophores. Right, right. So I think the fact that... I think the judges stayed in their lanes. They stayed in their lanes. They were guided by the Code of Civil Procedure and the timelines. And back to my utopian hypothetical, we would not be here if you had a court reporter and marked exhibits. Okay. And I think we would all be very grateful for that, but that's not what happened. Let me ask you this question. What if Mr. Kalibak went to bankruptcy court to seek a bankruptcy and discharge this judgment? Is it too late for the bankruptcy court to decide if it was support or property? I'm not a bankruptcy lawyer, and I don't play one on TV. I do believe that maintenance obligations are not dischargeable under any circumstances. So their brief is replete with discussions. By the way, I'm not a bankruptcy lawyer either, but the brief is replete with discussions about bankruptcy courts being able to look behind those labels and determine long after these debts were imposed whether they were really property or support. I... It would be easier for this court if it was a clear deadline and no one could be asked about the 9-8 judgment and no one had a responsibility to allocate it. I do think this is true about bankruptcy. So yes, they would be able to do it even if it was 10 years from now. Based on what I know about Article III and bankruptcy court jurisdiction, I believe that the bankruptcy court would have jurisdiction to determine what was property and what was maintenance, I believe. So the idea that we're going to run... So what is it exactly that prevents that determination from being made more than two years after this arrearage judgment was entered? Because at the point when collection was sought through the turnover, it was at that point that... And I'm assuming Mr. Kalibok was not getting Social Security at the time the judgment was entered. I don't even know about whether he was getting Social Security as of 9-8-20. I don't think it's in the record. It is in the record. But in any event, where is the deadline to allocate support versus property settlement? Because it really didn't become a right question until that garnishment was filed. I'm not sure there's a lot to answer there. I believe that the time clock to modify or amend or challenge the substance of the judgment orders was 30 days under the Illinois Code of Civil Procedure and maybe up to two years under a 214-01 petition. I don't think I agree that the issue became right only when the turnover order was entered. And I believe, though don't hold me to it, that the Bankruptcy Court would have not been precluded from piercing into the parties' agreements. But I think we made a statement in our brief that the bankruptcy code was changed after the preempt was entered into. I was going to ask you about that. Why is it BAPCA? Pardon? Why does the amendment change bankruptcy law in this area? I'd have to refer to my brief. I'm admitting I'm not a bankruptcy lawyer, but let me... Because I reviewed that. You didn't cite an authority for that. You cite the amendment, but you don't cite an authority for that statement that those bankruptcy cases are no longer relevant due to the amendment. Well, I agree I didn't do that. But what I also said was that every single case cited by Ms. Quinn were prior to the amendment of the Bankruptcy Act. It's true. I'm glad to hear you say you do remember it in your brief. You didn't cite any authority, but you did cite the statute. But my question is, even though you didn't cite anything for that proposition of what you call law, you don't explain it either. You don't say why it is that... I guess I would say it was BAPCA, but what is it, B-A-P-C-P-A, I think.  You don't explain what it is about the BAPCA amendment that draws you to that conclusion, and I wanted to give you a chance to explain that. I'm looking at pages 47 and 48 of my brief, where I say that after BAPCA, the intent of the parties when documenting a marital settlement agreement and the distinction between whether it's alimony and maintenance on the one hand or support versus a division of property on the other is no longer relevant. No, I did not cite a case to support that, but I believe it to be true based on the research that I did and the fact that the cases cited by Ms. Quint are all pre-BAPCA. And that goes to dischargeability, in fact. That goes to dischargeability. The argument that Mr. Talbot may die one day and that's why I need relief now, well, that's irrelevant because according to the well-drafted marital settlement agreement, his liability survived his death. One last point. I think that Ms. Quint's ability to garnish Mr. Talbot's Social Security payments for maintenance only was low-hanging fruit, and why she waited until April of 22, almost 20 months later, to finally garnish those wages, I don't understand it. When did he go on Social Security? Pardon? When did he go on Social Security? When did he go on Social Security? In 1981? No. She's 81 years old. 67? 67.  So that would be... 14 years. Right. So, why she waited, none of the other extremely aggressive collection practices for books, jewelry, guns, paintings, all of that, none of it was contingent... No. None of it was contingent on whether or not the judgment was allocated for property or maintenance. I don't know the answer to this question. It's hypothetical. It's unanswered. I don't know if her counsel knew of this Social Security regulation. I don't know. What I do know is, had she moved more swiftly, it was low-hanging fruit. She could have presented an allocated judgment order very quickly and garnished the Social Security payments immediately. And she never did so. I have one question. Mr. Schwartz indicated that he felt that the record needed to be perfected such that there were things that were not included in the consideration by the trial court. Which trial court? ETAR. Okay. Many questions have been asked relative to whether or not we should render a judgment based upon calculation in the record. If that takes place, where, when, and if will you have had an opportunity to cross-examine or present any contrary evidence relative to our adjudication? Well, we wouldn't have that chance if the appellate court is going to do that on its own. And what's the catch-22 for Mr. Kalibik is, first, Ms. Quinn said, we can't allocate. She opposed it. And then she said Judge Bitar didn't need to allocate either. And so these 17 instructions on remand that are included to her notice of appeal, I think go way, way, way beyond what this court can do based on the record here. She had every opportunity to make her record. She could have attached an exhibit to the 9820 hearing. Here's what's owed as of 9820. Here's what was owed in August of 19. Here are payments made. Here's interest accrued. Whatever. She didn't do any of that. Counsel, I'm not asking about what she should have done. I'm asking about whether or not your client is going to have the opportunity to make a response to an adjudication by this court based upon the record that is presently in existence. Don't tell me what she could have done or what she can't do. What I'm asking you is, is your client going to be given due process relative to whether or not you had an opportunity to present any evidence to refute, negate, or disallow whatever took place in the trial court? If this appellate court is going to do its own calculations without talking to us, I think that would be a due process problem. Thank you. Thank you. Your time is up. Thank you. Mr. Schwartz, you may proceed on Mr. Tannen's exit. Thank you. Thank you, Clarence. A couple of points here. First off, there's no collateral attack here. The reason there is no collateral attack is because the Withholding Act claim that we're talking about is an enforcement. It's part of the enforcement of the judgment. That is part and parcel of the motion for turnover order, which was included within the supplementary proceedings. He brings up a good point. It's been 14 years since his client was on Social Security. Why did she wait so long? Justice, I have no answer for that, but I do have an objection to essentially taking evidence on an appeal. This is unusual to be asking a party for what's... I guess she could have figured that out on her own. He is in his early 80s. He had a right to take Social Security. I don't recall seeing where and when he first started taking it. I mean, it says 14 years. Certainly, maybe it's 8, maybe it's 7, maybe it's 10. At some point prior to her coming in and asking for that relief, she waited some time. I think this is a brand new issue of waiver. I mean, this isn't an issue that we're... I think the phrase is latches. Could be latches. Well, latches would require undue delay and prejudice. I don't know that there's prejudice that he didn't have to take a... didn't have a garnishment out of his Social Security. Slumbering on your rights. What's that? Slumbering on your rights. I understand the point. The time to determine in the nature of support, this was going to Justice Mullen's question, that does not expire. I mean, the time to determine in the nature of support becomes an issue when there is a request for a garnishment of Social Security. And the way that I've heard my bankruptcy attorney colleagues put out that is BATSEPA. Thank you. And that was in 2005. Congress made some major changes to the bankruptcy code. Oddly enough, the divorce court is able to make this type of analysis, too. A state court can. This is permitted under the bankruptcy law. And you'll see that in one of the cases that we cited, I believe that's what was happening. I think that was the Porter case, where they were determined... dischargeability or non-dischargeability of the debt. So that's an excellent question, because if we're presenting this statutory claim and there's no time limit, it looks back to whether or not this is dischargeable, which is typically what happens in a bankruptcy court. And by the way, the reason we cited all the bankruptcy cases is this is typically where you find this particular issue come up. So if we would remand it, do we remand it to Judge Pinkhart or Judge Smith? I think it has to be remanded to the collections court, because what we are doing is a collection-related activity. It is part of the supplementary proceedings, which belongs in the collection court. All right. That at least dovetails with what I was going to ask next, which was about, since you know how to pronounce things, Stroney v. Eggland. S-T-R-O-J-N-Y. Is that one I don't know how to pronounce? Well, as I understand the case, we'll just call it Stroney for now. It stands for the proposition that the supplemental proceedings court is supposed to discover assets and compel application of funds towards the judgment. It's really a stay-in-your-lane discussion. And isn't that a bit far afield for a supplemental proceedings court? No, because if you take a look at Section 2-1402 of the Code of Civil Procedure, this is something I actually deal with on a day-to-day basis, one of the things that you're supposed to do as a creditor during a supplementary proceeding is you're supposed to look for assets of the judgment debtor, and you're also supposed to determine whether assets are exempt, which is the whole point of the Social Security exempt or the exception that's created by those claims. This involves recreating the time of the judgment of dissolution. According to you, you look back to, I forget the phraseology, but it's basically the circumstances of the party at the time of the judgment to determine whether you label this debt property or support. And in bankruptcy, the bankruptcy judge has to make that. There's no divorce court to send it over to. Justice Shostak said, oh, divorce or supplemental proceedings, and you say, oh, supplemental proceedings. But here, since you're looking at the time of the entry of the judgment and I think to a certain extent the time of the entry of the 9-8 orders, because at least part of that 9-8 judgment is inarguably determining a support arrearage, wouldn't that be better heard by the divorce court? And I realize you're in a little bit of a pickle here because for reasons I know, your client took the position that the divorce court shouldn't make that allocation. And yet my concern is if we take your advice and send it back to the supplemental proceedings court, what does that do with the proposition of law stated by Stroney? Well, here's the answer to that question, which is the Withholding Act has to be part of the collection case. The Withholding Act, as interpreted by this court in Trular, is talking about the fact that you need to make a determination of whether something is support or non-support, or actually whether it's in the nature of support. And in order to fulfill its job, the collection court would have to do that. It would have to go back and say, well, at the time... Well, so would you object, then? What if we didn't say and we just sent it back and it went back in front of Judge Vitar? I don't think we would. Whoever's in the supplemental proceedings, then would you object to them and say, no, no, that's against the law to send it over to divorce? They can't do it. I'm not going to object. I'm asking to send this back to the collection court with instructions to undertake the type of analysis that's required under the Withholding Act, which requires us to inquire into that particular facet of what we're dealing with. But your case law that says you can't have an award of maintenance in lieu of property, but you can have property in lieu of maintenance, which is... I can't recall the case, which is a... I don't have that brief in front of me... which is in a divorce proceeding. So you have specialized rules in family law that differ from the collections court. So wouldn't it be better that those issues be raised in family courts where they know the law with respect to division of property versus collection court? My experience with the judges in the Lake County system is that they move around to different divisions of the courthouse, and they wind up getting to know quite a bit about individual different areas. And it's all one court system. I think we pointed that out, this idea that, oh, a collections judge is a completely different system. They're all part of the 19th Judicial Circuit. And, well, we just would like to get a good, qualified, competent judge at the 19th Judicial Circuit to rule on this issue. And we'll practice in front of a lot of the judges there and have a lot of respect for my opinion. Counsel, I think your argument is in the nature of an infamy. I didn't hear the rest. An infamy, it's a syllogism in which a premise is presumed. The premise that you've presumed and you haven't established is that the determination of what is attachable or assignable or executable relates to a figure. And the question is, is the figure all or none? Because this isn't a singular yes or no. This isn't it's all property or it's all maintenance. It can be anything in between. It can be X plus Y equals 1 million or whatever. And so the point is, there has to be an allocation. And an allocation means from $1 to a million or the entire amount and anything in between. And that allocation belongs in divorce court. It doesn't belong in collection court. So that was my point. Your opinion presumes that it's either all or none because if it isn't all or none, a judge is going to have to exercise his determination, his wisdom, his judgment, make findings of facts and conclusions of law. And then the question, I think, is who is better to do that? Is it a divorce court judge that does it every day? Or is it a collection judge who doesn't do it every day but when he was in divorce, he does it every day? So I don't want to prejudge a case, but I'm suggesting if he goes back, it's probably I'm going to vote for going back to the divorce court because that's where the The allocation that is the keystone of this case is determined by not a collection judge. Because if he does determine it, he's going to look at the order and he's going to determine that it's all property because that's what the thing says. Except that, you know, again, if you look at it under the statute, whether or not it's designated as property or maintenance or whatever, the withholding act requires the court to decide whether it's in the nature of support. I don't have a How can you decide it's in the nature of support if the order indicates or the memorandum, whatever the document is, what indicates no amount for maintenance and the entire amount for property? But how is any judge going to be able to rule that the manifest way to the evidence is that the property that has been delineated is really actually, despite no amount in the other column, is support? I'm glad you asked that question because you can take a look at what the Merit of Settlement Agreement says. You can take a look behind the Merit of Settlement Agreement. Is the Merit of Settlement Agreement in divorce courts on a docket and record and archive or is it in the collections? It is part of the underlying judgment for dissolution of merit. You can ask them to take judicial notice, but it's still part of the divorce. It was part of the divorce at the moment in time when the divorce court or the divorce case became a judgment for dissolution of merit. I have no further questions. Do you have any further questions? I have to ask. Sure, go ahead. Since Justice McClaren made the point that we can search the record for any reason to affirm, and so what is your reaction or what would your argument be if we were to find that looking at the 9-8 judgments and other materials of record that there was no issue of fact as to whether or not any of it was support, result property in a nonspecific judgment in the typed order, in the parallel 9-8 contempt order, the other is checked with cash payments in the full amount of your judgment, would that support affirmance of Judge Bitar's dismissal of your garnishment? I don't believe so because, again, Judge Bitar was presented with a question which required him to look behind the label and say was this at all in the nature of support. The burden was on you. But we weren't allowed to bring in evidence to meet that burden. But on 9-8 the burden was on her. And on 9-8 Charlene prevailed and got the judgment record. Right. It didn't specify what it was. I will agree with that. The order says what it says. But the point is that during the collection, under the withholding act and under the Trular case, that's how we looked at it. Because Trular talks about ambiguity. So if it's ambiguous, then. Trular talks about looking behind the curtains. This is like my favorite scene from The Wizard of Oz. Pay no attention to the man behind the curtain. You have to look at the man behind the curtain to see what's happening. And in order to do that, you need to have a hearing, you need to allow those parties to testify. Justice McClain, your comment was, when you were questioning my closing counsel, was quite pertinent. He had to have the opportunity to come in with his evidence and cross-examine. I think that's the fair way to do it. I did have one other point that I wanted to make, just a quickie. Closing counsel had talked about the fact that BAPCFA went into effect in 2005, and all the bankruptcy cases we cited were before that. Well, the Trular case was in 2010 by this court, and it cited a bunch of the pre-BAPCFA bankruptcy cases. So that ought to give you some idea of how this court has viewed the importance of those pre-BAPCFA bankruptcy cases. Did you find anything on that bit of the record that you wanted to bring to my attention? Yes. I'm sorry to interrupt you like that. I did. I appreciate that. Let me find it on my computer. Let me just log in here. What you were referring to, I think, was the last sentence in Paragraph 6 of the reply that you had mentioned, and that was at record page C-2339, that Judge Bitar does not require any further adjudication of the amounts owed for maintenance on the amounts owed for property payments. And I don't think that that is all that inconsistent, because if the Withholding Act says that a property payment can be in the nature of support, that's not dispositive. It's helpful. It's something that is helpful to the court's analysis. It's something that you need to take a look at, but it is not the be-all and end-all. And if you take a look at the elements in the Pierce case, and there was an 11th Circuit case out of Florida, I think, called Cummings, where it was a similar analysis. The courts go behind that curtain. They look at the man operating the controls, and they say, we're going to look behind it, and we're going to see that even if this is property, is this something that was in the nature of support? I hear you. I think it's 2337. If that's a two, because these numbers are all cut in half, it's paragraph one. The second paragraph, the second sentence of paragraph one, that's where... Okay, let me take a look. The one that I have on 23... No, you're right. There's something on 2339 that says what you said it said. You're right. Okay. But I was looking at 2337, paragraph one. Charlene denies Jones v. Turner would have to allocate, essentially. And it's the same concept, which is I don't think you need to allocate between maintenance and property in order to determine if it's in the nature of support, which is a statutory question. Well, what else is it? If it's not support, then it's a part of the property settlement. Exactly. That's the allocation they make in bankruptcy. That's the allocation that you say the supplemental proceedings judge would have to make. Except all of the case law that we cited talk about the fact that property can be distributed as a way to support the financially weaker spouse. If she's getting... Well, my question about it, you're right, you look behind the labels. But the determination as you're looking behind the labels is is this, although it's labeled property, is it really support? Charlene took the position in front of Judge Smith that BHI wouldn't have to do that. Which, again, how legally significant is it? I don't know, but it crosses my mind as I sit here. I think that's the answer. If anybody has any other questions, I'll be happy to address them. Otherwise, thank you all for your time. Very good. We'll take the case under advisement. It will be a short recess. We have one other case on the call. All rise.